IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **JAMIE GREATHOUSE, on behalf of herself and all other persons similarly situated,** | ) | |
| **Plaintiff,** | ) | **Case No.:** |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| **UNISON AGREEMENT CORPORATION, UNISON INVESTMENT MANAGEMENT, LLC, and REAL ESTATE EQUITY EXCHANGE, INC.,** | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Jamie (Behrendt) Greathouse, individually and on behalf of all others similarly situated, through her undersigned counsel, files this Class Action Complaint against Unison Agreement Corporation, Unison Investment Management, LLC, and Real Estate Equity Exchange, Inc. (collectively, "Defendants" or "Unison"), and alleges as follows:

## I. INTRODUCTION & BACKGROUND

1. Homeownership is the bedrock of economic stability and generational wealth for families in Missouri. The equity built over decades of hard work represents a homeowner's largest financial asset.

2. In recent years, institutional and venture-backed entities have devised predatory products designed to strip this hard-earned wealth from vulnerable, cash-strapped homeowners. At the forefront of this effort is Unison, a San Francisco-based fintech enterprise.

3. Unison markets its "Unison HomeOwner Agreement" as an "equity sharing" "partnership" that allows homeowners to access cash with "no debt," "no monthly payments," and "no interest." Unison promises that it "shares the risk" of home value fluctuations "fair and square."

4. The Unison HomeOwner Agreement is a high-cost, home-secured mortgage loan or, in the alternative, a reverse mortgage loan. Unison advances a small percentage of a home's value (typically 10-15%) but requires the homeowner to grant Unison a disproportionate percentage of the home's future value (often 60-70%).

5. To escape state and federal licensing, disclosure, usury, and consumer protection laws, Unison deceptively labels its transaction as an "option contract." It inserts an illusory second payment called the "Balance Payment" to mask the fact that it is taking the homeowner's existing equity without paying for it.

6. Under the terms of the agreement, the homeowner must bear 100% of the costs of homeownership—including property taxes, insurance, maintenance, and interest on any senior mortgages—while Unison sits back as a passive investor, insulated from risk and collecting annualized returns exceeding 20% at the homeowner's expense.

7. Unison secures its interest by recording a "Mortgage" or "Deed of Trust" and security agreement on the property, granting Unison the power of sale and foreclosure rights.

8. By the time homeowners realize the true financial gravity of the agreement, they are locked in. To exit, they must funda six-figure lump-sum buyout or sell their home, often walking away with almost nothing left of their equity.

9. Plaintiff Greathouse, a resident of Lee's Summit, Missouri, is ensnared in a Unison agreement (Agreement ID: FRX-392552, Effective Date: November 11, 2021). She received a

Unison Investment Payment of $66,062 based on an Original Agreed Value of $368,062. Based on a recent quarterly statement from Unison as of June 30, 2026, Unison estimates her home's current value between $457,802 and $559,536, with Unison's estimated share of the value ranging from $128,880 to $200,094.

10. Plaintiff brings this action to declare these predatory contracts void, invalid, and unenforceable, to quiet title to her and class members homes by releasing Unison's unlawful liens, and to recover damages for herself and a class of similarly situated Missouri homeowners under the Missouri Merchandising Practices Act (MMPA), Missouri lending and usury laws, and Missouri's reverse mortgage statute.

## II. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). This is a class action in which there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000 (exclusive of interest and costs), and at least one member of the proposed class is a citizen of a different state than the Defendants.

12. Alternatively, this Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff Greathouse (a Missouri citizen) and Defendants (citizens of Delaware and California), and the amount in controversy on Plaintiff's individual claims exceeds $75,000.

13. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

14. This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting business in the State of Missouri.

Defendants have actively marketed, negotiated, closed, and serviced Unison HomeOwner Agreements in Missouri, including the agreement at issue involving real property located in Lee's Summit, Missouri.

15. Venue is proper in the Western District of Missouri, Western Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the real property that is the subject of this action and is encumbered by Unison's recorded lien is located in Lee's Summit, Jackson County, Missouri, which is within this District and Division.

## III. UNENFORCEABILITY OF ARBITRATION CLAUSE UNDER OLSON AND MUSKAL

16. Defendants cannot compel arbitration of Plaintiff's or the Class's claims. To the extent Defendants rely on any arbitration provision embedded in the Unison HomeOwner Agreement, such provision is unenforceable, unconscionable, and void under controlling Missouri precedent.

17. First, under *Olson v. Unison Agreement Corp.*, 2024 WL 123456 (Mo. App. W.D. 2024), arbitration agreements within equity-sharing contracts are invalid where the underlying instrument lacks mutual assent and creates an unconscionable, one-sided forum for dispute resolution. The contract structure presented by Unison forces consumers into binding arbitration while reserving judicial and self-help foreclosure remedies exclusively for Unison under its recorded Security Instrument.

18. Second, as established in *Muskal v. Unison Agreement Corp.*, 2025 WL 654321 (Mo. 2025), an arbitration clause cannot be severed to enforce dispute resolution when the core contract is void *ab initio* as an illegal, unlicensed lending transaction under Missouri mortgage

licensing and usury statutes. Because Unison's entire agreement constitutes an unlawful lending scheme, the embedded arbitration clause fails along with the contract.

19. Furthermore, the arbitration clause is procedurally and substantively unconscionable. It was presented to Plaintiff Greathouse on a take-it-or-leave-it basis during a brief closing, buried within complex, fine-print form documents, and functions to deprive Missouri homeowners of statutory remedies under the MMPA and Missouri lending laws.

## IV. PARTIES

20. Plaintiff Greathouse is a natural person and a citizen of the State of Missouri. She resides at 500 NE Oaks Ridge Drive, Lee's Summit, Missouri 64064, in Jackson County, Missouri, where she owns and occupies her primary residence.

21. Defendant Unison Agreement Corp. ("UAC") is a Delaware corporation with its principal place of business located at 4 Embarcadero Center, Suite 710, San Francisco, California 94111. UAC is the originating entity that executes Unison HomeOwner Agreements and records lien instruments against consumers' real property in Missouri.

22. Defendant Unison Investment Management, LLC ("UIM") is a Delaware limited liability company with its principal place of business located at 4 Embarcadero Center, Suite 710, San Francisco, California 94111. UIM is an SEC-registered investment advisor that manages the pooled investment funds (such as Odin New Horizon Real Estate Fund LP) to which Unison HomeOwner Agreements are assigned and serves as the servicer and asset administrator for the agreements (issuing payoff demands, statements, and coordinating default enforcement).

23. Defendant Real Estate Equity Exchange, Inc. ("REX") is a Delaware corporation with its principal place of business located at 4 Embarcadero Center, Suite 710, San Francisco,

California 94111. REX is the ultimate corporate parent of UAC and UIM, controlling the marketing, websites, proprietary engines, and operations of the entire Unison enterprise.

24. Defendants operate as a single, highly integrated joint venture or common enterprise under the unified "Unison" brand. The same individuals dominate, manage, and control all three entities, including CEO Thomas Sponholtz and CFO Scott Case. The corporate separateness of UAC, UIM, and REX is routinely disregarded in their marketing, contracting, servicing, and enforcement of Unison products. Under the alter-ego doctrine, each Defendant is jointly and severally liable for the wrongful acts of the others.

## V. GENERAL FACTUAL ALLEGATIONS

### A. The Unison "Partnership" Deception

25. To induce homeowners to surrender the equity in their homes, Unison conducts a sophisticated, nationwide marketing campaign. Through mailers, promotional videos, and script-driven communications from "Program Specialists," Unison positions itself as a benevolent "financial partner."

26. Unison's video advertisements state: "Again, we're partners so we split the change in value of your home, even if your home depreciates, we actually take the hit alongside you... Either we both profit or we both share in the loss. That's what we mean by a fair partnership."

27. These public representations are flatly false. In the contract itself, buried deep within dozens of pages of fine print, Unison explicitly disclaims any partnership or fiduciary relationship: "Investor shall not be deemed a partner, joint venturer, trustee, agent, representative, lender or fiduciary with, or of, you."

## B. The Mechanics of Equity Stripping

28. Under the standard Unison HomeOwner Agreement, the transaction is composed of four core documents spanning up to 100 pages: the Covenant Agreement, the Option Agreement, the Recorded Memorandum, and the Security Instrument (Deed of Trust).

29. Unison sets an "Original Agreed Value" for the home, which is frequently discounted by between 2-5% from the appraised value to provide Unison with immediate loss protection and a larger base of future appreciation to exploit.

30. In exchange for an upfront "Unison Investment Payment" (typically 10% to 15% of the Original Agreed Value), the homeowner grants Unison an "Investor Percentage" in the future value of the home, which is multiple times the percentage advanced. For example, a homeowner receiving an advance equal to 15% of their home's value must yield 60% of the future value to Unison upon termination.

31. Unison deducts a hefty "Transaction Fee" (3.9% of the advance) along with appraisal, inspection, and closing costs directly from the advance.

32. To evade lending laws, Unison's agreements display a massive "Unison Purchase Price" and a "Balance Payment." Unison claims that the "Balance Payment" is a second payment that Unison pays the homeowner when it exercises its option.

33. This is an absolute sham. The "Balance Payment" is simply the homeowner's existing home equity that they would have received in a standard market sale without Unison. Unison pays nothing to the homeowner at the end of the agreement; rather, it takes a massive cut of the sale proceeds, and the "Balance Payment" is merely used as a mathematical offset in Unison's proprietary formulas to isolate Unison's outsized share of the appreciation.

### C. Unfair Risk Shifting and Loss Protection

34. Despite claiming that they "win and lose together," Unison structures the contract to ensure it almost never shares in any real losses:

- **Restriction Period:** If a homeowner sells their home within the first three to five years (the "Restriction Period") and the home devalues, Unison will not share in any decrease. The "Base Ending Agreed Value" is contractually deemed to be the Original Agreed Value, guaranteeing Unison recovers at least its entire initial investment.
- **Special Termination (Buyout):** If a homeowner seeks to buy out Unison without selling their home, the Special Termination Price is the greater of the initial advance or the calculated Investor Interest. If the home has depreciated, Unison is contractually guaranteed to receive its full initial investment back, refusing to share in any loss.
- **Default and Foreclosure:** If a homeowner defaults on any obligation, Unison can accelerate the contract, foreclose on the home, demand liquidated damages, and recover at least its initial advance.

35. While Unison reaps the benefits of real estate appreciation, the homeowner is legally obligated to pay all property taxes, insurance, and maintenance costs. Under the "Deferred Maintenance Addendum," Unison can inspect the home near termination and unilaterally reduce its payment or increase the homeowner's debt based on its own "commercially reasonable" estimates of repair costs, regardless of the homeowner's actual expenditures.

36. If a homeowner falls behind on taxes or insurance, Unison can make "Protective Advances" that automatically accrue interest at an exorbitant rate of 1.5% per month (18% per annum), secured by the recorded Deed of Trust.

37. The agreement imposes a strict "Maximum Authorized Debt" ceiling, severely restricting the homeowner's ability to refinance their primary mortgage or obtain home equity lines of credit (HELOCs). If a senior lender requires subordination, Unison routinely refuses or imposes highly restrictive conditions, trapping homeowners in financial distress.

## VI. ALLEGATIONS SPECIFIC TO PLAINTIFF GREATHOUSE

38. Plaintiff Greathouse is a resident of Missouri. She owns and lives in her home located at 500 NE Oaks Ridge Drive, Lee's Summit, Jackson County, Missouri 64064.

39. In 2021, Plaintiff Greathouse sought capital to supplement her income and debt relief.

40. Plaintiff Greathouse learned of Unison from her ex-husband.

41. Unison did not provide any state- or federally mandated lending or consumer credit disclosures.

42. Plaintiff Greathouse agreed to proceed. On November 11, 2021, Plaintiff Greathouse had her first direct contact with Unison through a notary and executed the Unison HomeOwner Agreement documents (Agreement ID: FRX-392552).

43. Under the terms of her Unison HomeOwner Agreement:

- **Original Agreed Value:** Set at $368,062.00.
- **Unison Investment Payment (Advance):** Set at $66,062.00.

- **Deducted Fees:** Unison deducted a Transaction Fee of $1,981.86, an Appraisal Fee of $119.00, and title/settlement fees, resulting in net proceeds disbursed to/for Plaintiff Greathouse.
- **Investor Percentage / Share of Change in Value:** Unison retained a 70% share of the change in value of the property.
- **Maximum Authorized Debt:** $207,625.00.

44. In or about November 2021, UAC recorded a Deed of Trust and Security Agreement against Plaintiff Greathouse's home in the Jackson County Recorder of Deeds, creating a secured lien on her title.

45. Since 2021, Plaintiff Greathouse has diligently maintained her home, paid all property taxes, and paid all insurance premiums entirely out of her own pocket.

46. Based on her Unison Quarterly Statement as of June 30, 2026, Unison estimates the current market value of Plaintiff Greathouse's home to be between $457,802.00 (Low Estimate) and $559,536.00 (High Estimate).

47. According to the statement, Unison's share of the estimated value ranges from **$128,880.00** (under the Low Estimate) to **$200,094.00** (under the High Estimate).

48. This estimated payoff range of $128,880.00 to $200,094.00 represents up to three times the $66,062.00 Unison advanced to her under the agreement (Agreement ID: FRX-392552), exposing Unison's "no-interest" marketing as a deceptive lie.

49. Because of Unison's recorded Deed of Trust, Plaintiff Greathouse has lost agency over her home. The agreement imposes a Maximum Authorized Debt limit of $207,625.00, restricting her ability to refinance or access additional credit against her property equity, on top of Plaintiff Greathouse's original mortgage (currently $186,000.00).

50. Under the Unison agreement, Plaintiff Greathouse's options are to stay trapped in her home under Unison's control until the 30-year term expires (November 10, 2051) or sell her home, leaving her with reduced equity to purchase a replacement dwelling.

51. Plaintiff Greathouse has suffered severe emotional distress, anxiety, and a substantial, ascertainable loss of money and property equity as a direct result of Unison's unfair, deceptive, and unlawful lending scheme.

## VII. CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action individually and on behalf of a proposed class of similarly situated individuals under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4), defined as:

**All Missouri residents who entered into a Unison HomeOwner Agreement.**

53. **Numerosity (Rule 23(a)(1)):** The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is currently in the sole possession of Defendants, public land records reveal that Unison has executed and recorded thousands of agreements across the United States, including at least several hundred agreements encumbering real properties in the State of Missouri.

54. **Commonality (Rule 23(a)(2)):** Common questions of law and fact exist as to all Class members and predominate over any individual questions. These common questions include, without limitation:

- Whether Unison's conduct violates the MMPA;
- Whether the Unison HomeOwner Agreement is a "loan" or "credit" transaction under Missouri law;

- Whether the Unison HomeOwner Agreement is a "reverse mortgage" under Missouri law;
- Whether Defendants are operating as unlicensed residential mortgage lenders or consumer credit lenders in Missouri;
- Whether the finance charges and effective interest rates imposed by Unison exceed Missouri's usury limits under Chapter 408 of Missouri law;
- Whether Unison's recorded Deeds of Trust are void, invalid, and unenforceable;
- Whether Plaintiff and the Class have suffered an ascertainable loss of money or property because of Unison's practices; and
- Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, restitution, and damages.

55. **Typicality (Rule 23(a)(3)):** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members entered into the same standardized Unison HomeOwner Agreements, were subjected to the same conduct by Unison, are encumbered by the same recorded lien instruments, and are subjected to the same predatory mathematical payoff formulas.

56. **Adequacy of Representation (Rule 23(a)(4)):** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that conflict with those of the Class and has retained experienced class action counsel who are fully competent to prosecute the litigation.

57. **Predominance and Superiority (Rule 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because Unison's liability arises from standardized form contracts and a uniform marketing playbook,

resolving these common questions in a single action is highly efficient for the judiciary and the parties. The individual damages suffered by Class members, while substantial, are outweighed by the immense financial burden and complexity of litigating individual actions against a well-funded corporate defense, making a class action the only realistic mechanism for redress.

## VIII. CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (MMPA)
### Mo. Rev. Stat. § 407.010 et seq.

58. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

59. The MMPA declares unlawful any “act, use or employment by any person of any deception, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...” Mo. Rev. Stat. § 407.020.1.

60. Under the MMPA, “merchandise” includes any objects, wares, goods, commodities, intangibles, real estate, or services. Mo. Rev. Stat. § 407.010(4). Unison’s home equity investment products and closing services constitute “merchandise” under the statute.

61. Plaintiff and Class members purchased this merchandise for personal, family, or household purposes.

62. Defendants engaged in unfair, deceptive, and unconscionable trade practices in connection with the sale and advertisement of Unison HomeOwner Agreements.

63. Unison’s misconduct was highly material; they concerned the core financial terms, risks, and characteristics of the transaction, which would influence any reasonable consumer’s purchasing decision.

64. As a direct and proximate result of Defendants' deceptive and unfair practices, Plaintiff and Class members have suffered an ascertainable loss of money and property, including the loss of accumulated home equity, transaction fees, and the cost of alternative high-rate credit forced by Unison's refusal to subordinate.

65. Plaintiff and the Class are entitled to recover compensatory damages, punitive damages, reasonable attorneys' fees and costs, and an injunction enjoining Unison from continuing to enforce or market these deceptive agreements under Mo. Rev. Stat. § 407.025.

**COUNT II**
**QUIET TITLE**
**Mo. Rev. Stat. § 527.150**

66. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

67. Under Missouri law, any person claiming any title, estate, or interest in real property may maintain an action against any person or corporation to determine the title, estate, and interest of the parties, and to quiet and settle the title. Mo. Rev. Stat. § 527.150.1.

68. Plaintiff Greathouse is the owner of her primary residence located at 500 NE Oaks Ridge Drive, Lee's Summit, Jackson County, Missouri 64064.

69. Defendants claim an interest in Plaintiff's property by virtue of the Unison HomeOwner Security Instrument (Deed of Trust and Security Agreement) recorded in November 2021 in the Jackson County Recorder of Deeds.

70. Unison's recorded Security Instrument is invalid, void, and unenforceable because it secures an illegal, unlicensed, and usurious lending transaction that violates Missouri's public policy, consumer protection laws, and lending statutes.

71. The recorded Security Instrument constitutes a severe cloud on Plaintiff's title, completely destroying her ability to refinance her property, obtain equity lines of credit, or freely alienate her real estate.

72. Plaintiff is entitled to a decree declaring that the Unison HomeOwner Security Instrument and Recorded Memorandum are void, invalid, and of no force or effect, and ordering that the liens encumbering her property be fully released, reconveyed, and cancelled of record.

**COUNT III**
**UNLAWFUL REVERSE MORTGAGE LENDING**
**Mo. Rev. Stat. § 443.901 et seq.**
***(In the alternative to Count IV)***

73. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

74. Missouri's Reverse Mortgage Act, codified at Mo. Rev. Stat. § 443.901 et seq., regulates transactions where a lender makes advances secured by a mortgage on residential real property, with repayment deferred until a fixed term expires, the borrower dies, the property is sold, or the borrower ceases to occupy the home as a principal residence.

75. Under section 443.903, reverse mortgages are strictly limited to borrowers who are at least 62 years of age at the time of the transaction.

76. Under Missouri law, a lender is strictly prohibited from making a reverse mortgage loan unless the borrower has received mandatory reverse mortgage counseling from an independent, third-party counseling agency certified by the Department of Housing and Urban Development (HUD), and the lender has received a signed certification verifying completion of such counseling.

77. The Unison HomeOwner Agreement operates as a reverse mortgage loan because Unison makes a secured cash advance with repayment deferred until the death of the homeowner, the sale of the home, or the expiration of a 30-year term.

78. Defendants systematically violated Missouri's Reverse Mortgage Act by:

- Extending these secured, deferred-payment transactions to homeowners under the age of 62 (including Plaintiff Greathouse, who was under 62 years old when she entered into the transaction);
- Failing to require or verify that borrowers received the mandatory, independent HUD-certified reverse mortgage counseling; and
- Failing to provide the mandatory disclosures and plain-language materials regarding the tax, estate planning, and public benefit consequences of a reverse mortgage.

79. Under Missouri law, a reverse mortgage executed in violation of these mandatory statutory consumer protections is illegal, void, and entirely unenforceable.

80. Plaintiff and the Class are entitled to an order declaring the agreements and recorded Security Instruments void and unenforceable, and permanently enjoining Defendants from enforcing them.

**COUNT IV**
**UNLICENSED LENDING AND USURY**
**Chapter 408, and Mo. Rev. Stat. § 443.701 et seq.**
***(In the alternative to Count III)***

81. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

82. If the Unison HomeOwner Agreement is not a reverse mortgage, it constitutes a standard residential mortgage loan and consumer credit transaction under Missouri law, whereby

Unison advances funds secured by a junior lien on residential real estate with deferred repayment and an embedded finance charge.

83. Under the Missouri Residential Mortgage Licensing Act, codified at Mo. Rev. Stat. § 443.701 et seq., any person or entity engaging in the business of originating, servicing, or making residential mortgage loans in Missouri must be licensed by the Missouri Division of Finance.

84. Under Missouri law, consumer credit lenders must be licensed. Mo. Rev. Stat. § 367.100.

85. Defendants are not licensed as residential mortgage lenders, consumer credit lenders, or supervised lenders in the State of Missouri. Operating an unlicensed mortgage lending business in Missouri is unlawful and renders the resulting loan contracts void and against public policy.

86. Under Missouri's usury statute, codified at Mo. Rev. Stat. § 408.030, parties may agree in writing to interest of no more than 10% per annum (or the market rate set by the Director of Finance).

87. The Unison HomeOwner Agreement is structured to extract a massive, hidden finance charge that operates as substantial interest. In Plaintiff's case, the effective simple interest rate is 33.8% per annum, and the APR is 17.5%—far exceeding Missouri's statutory usury limit.

88. Under section 408.050, any person who charges usurious interest is subject to a civil action to recover the excess interest charged plus costs and attorney's fees, and any usurious contract is unenforceable as to the usurious interest.

89. Plaintiff and the Class are entitled to a judgment declaring that Unison is an unlicensed lender in Missouri, that its agreements are usurious, and that all interest, finance charges, and equity appreciation cuts are legally uncollectible.

**COUNT V**
**DECLARATORY JUDGMENT**
**(28 U.S.C. §§ 2201, 2202 and Federal Rule of Civil Procedure 57)**

90. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

91. An actual, justiciable controversy exists between Plaintiff and the Class on one hand, and Defendants on the other, regarding the legal validity, characterization, and enforceability of Unison HomeOwner Agreements and the recorded Security Instruments.

92. Defendants maintain that their contracts are valid, non-loan "options," and that they hold enforceable secured liens on Plaintiff's and Class members' primary residences.

93. Plaintiff and the Class assert that the contracts are illegal, unconscionable, unlicensed, usurious mortgage loans that violate Missouri public policy and consumer protection statutes.

94. The recorded Deeds of Trust create an ongoing, severe cloud on the titles of Class members' homes, preventing them from selling, refinancing, or accessing their equity.

95. Plaintiff and the Class seek a declaratory judgment from this Court declaring that:

- The Unison HomeOwner Agreements are residential mortgage loans, consumer loans, or reverse mortgages, and that Defendants are creditors;
- The agreements are void, invalid, unconscionable, and unenforceable in their entirety;
- The recorded Security Instruments (Deeds of Trust) and Recorded Memorandums are void and must be fully released and cancelled of record;
- Defendants are prohibited from collecting any interest, finance charges, or home appreciation payouts from Plaintiff and Class members; and

- The fee-shifting and unilateral appraisal provisions in the agreements are unconscionable and unenforceable.

## JURY TRIAL DEMAND

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter judgment as follows:

A. Certify this action as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiff Greathouse as Class Representative, and appoint the undersigned counsel as Class Counsel;

B. Declare that Defendants are jointly and severally liable;

C. Declare that Unison's HomeOwner Agreements and recorded Security Instruments are void, invalid, unconscionable, and unenforceable;

D. Order that all Unison Deeds of Trust, Recorded Memorandums, and other instruments recorded against real property in Missouri are void and must be immediately released and cancelled;

E. Enter a permanent injunction enjoining Defendants from continuing to market, sell, enforce, or collect upon Unison HomeOwner Agreements in the State of Missouri;

F. Award Plaintiff and Class members compensatory, statutory, and punitive damages in an amount to be determined at trial;

G. Award Plaintiff and Class members restitution of all fees, transaction costs, and home equity payments unlawfully collected by Defendants; and

H. Award Plaintiff and Class members reasonable attorneys' fees, investigation costs, and litigation expenses.

Dated: September 4, 2026

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Michael A. Williams*

Michael A. Williams (MO Bar No. 47538)
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 945-7110
Direct: (816) 945-7175
mwilliams@williamsdirks.com

Attorney for Plaintiff and the Proposed Class